IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                     |   |                                  |
|-------------------------------------|---|----------------------------------|
|                                     | : |                                  |
| AMERICAN ASSOCIATION OF BLOOD BANKS |   |                                  |
|                                     | : |                                  |
| v.                                  | : | Civil Action No. DKC 2008-2046   |
|                                     | : |                                  |
| BOSTON PATERNITY, LLC, et al.       |   |                                  |
|                                     | : |                                  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion for reconsideration of the court's July 28, 2009 order on jurisdictional discovery filed by Plaintiff American Association of Blood Banks.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Plaintiff's motion for reconsideration will be denied.

**I.  Background**

Plaintiff American Association of Blood Banks ("AABB") is an international not-for-profit organization, consisting of nearly 2,000 institutional members and 8,000 individuals involved in blood banking, molecular testing, and related biological therapies.  Incorporated under the laws of the state of Illinois, Plaintiff maintains its only office in Bethesda, Maryland.  Plaintiff owns federal trademarks and service marks for AABB (U.S. Registration No. 3,203,260) and AABB (Stylized)

(U.S. Registration No. 3,195,463) for use in connection with its services in the field of biological therapies (collectively, the "AABB marks").

From its Maryland headquarters, Plaintiff develops standards relating to relationship and DNA testing, an important and often required element in determining U.S. citizenship and immigration status.  Plaintiff also operates websites under the AABB.org and AABB.info domain names, where users can access information about the goods and services it provides.  In addition, it maintains an accreditation program intended to improve the quality and safety of blood and blood products for qualifying individuals and institutions.  Plaintiff's accreditation program has various membership levels. Institutional membership is only available to facilities that collect, process, test, or administer blood, or to facilities that provide cellular therapies or molecular testing services. Affiliate membership is available to companies in the health profession that do not otherwise qualify for institutional membership status or are not licensed or registered by the U.S. Food and Drug Administration.  Unlike institutional members, who have limited rights to use the AABB marks pursuant to AABB's Code of Ethics and Trademark Usage Guidelines ("Guidelines"),

affiliate members are prohibited from using the AABB marks in any manner by the Guidelines.

Defendant Boston Paternity, a New Hampshire corporation with its principal place of business in New Hampshire, acts as a broker for DNA testing services that determine paternity and immigration status.  Boston Paternity markets "nationwide service" and also works with numerous foreign embassies abroad. (Paper 19, Ex. L).  In January 2005, Boston Paternity applied for and received affiliate status with Plaintiff.  Since that time, Boston Paternity has renewed its affiliate membership with Plaintiff on an annual basis by mailing its membership dues to a P.O. Box in Baltimore, Maryland.

After Boston Paternity obtained affiliate status with Plaintiff, it posted the AABB logo on its homepage as well as on the Spanish, French, and Russian versions of its website.  In addition, in 2007, Defendants Boston Paternity and PST, a member of Boston Paternity and a New Hampshire corporation with its principal place of business in New Hampshire, registered four domain names consisting of the AABB marks: AABB.net, AABB.us, AABB.name, and AABB.bz.  Boston Paternity then used these domain names to host websites advertising its services.  During this time, John Quintal, President of PST and Boston Paternity, and a New Hampshire citizen and resident, also registered "AABB" as a

trade name with the New Hampshire Department of State for use in association with "DNA Testing Services." (Paper 19, Ex. F).

When Plaintiff learned of these activities, it sent cease-and-desist letters to Boston Paternity, warning that its use of the AABB marks violated AABB's guidelines for affiliate members. When that method proved unavailing, Plaintiff brought an administrative proceeding before the World Intellectual Property Organization ("WIPO") requesting transfer of the AABB.net domain name. On February 21, 2008, WIPO ruled in Plaintiff's favor and ordered Boston Paternity to transfer the AABB.net domain name to Plaintiff.

Despite losing at the WIPO proceeding, Boston Paternity, PST, and John Quintal continued their "unauthorized uses" of the AABB marks: in March 2008, PST registered three additional domain names consisting of the AABB marks – AABBtest.net, AABBtest.us, and AABBtest.org. (Paper 1, at 2). On August 6, 2008, Plaintiff filed an action in this court against Boston Paternity, PST, John Quintal, Joseph Quintal, and Ryan Quintal, asserting (1) violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (2) service mark and trademark infringement, 15 U.S.C. § 1114(1); (3) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); (4) false description and representation,

15 U.S.C. § 1125(a); and (5) service mark and trademark infringement and unfair competition under Maryland common law. (Paper 1). Plaintiff alleges that Joseph Quintal and Ryan Quintal, also citizens and residents of New Hampshire, are directors of either PST or Boston Paternity.

On September 4, 2008, John Quintal, proceeding *pro se*, filed a "motion to change venue" on behalf of Boston Paternity, PST, Joseph Quintal, and himself. (Paper 6). He asserted that it would be unreasonable for the court to exercise personal jurisdiction over Defendants because they did not have sufficient contacts with the state of Maryland. The same day, John Quintal also filed separate motions to dismiss on behalf of PST, Joseph Quintal, and himself. (Papers 7, 8, and 9). He requested that all claims against PST and himself be dismissed because AABB was attempting to pierce the corporate veil impermissibly by bringing an action against them. In addition, he argued that all claims against Joseph Quintal should be dismissed as Joseph Quintal was a minor and had not engaged in any meaningful business activities with PST.

On September 8, 2008, the court mailed a letter to John Quintal, informing him that, because he was not an attorney, he could only represent himself, and not the other Defendants, in this action. (Paper 10). The court also advised him that his

motions to dismiss claims against PST and Joseph Quintal would be marked as "filed in error" and that the other Defendants could only appear through counsel.  In response, John Quintal requested that the court convert his "motion to change venue" to a motion to dismiss for lack of personal jurisdiction on behalf of Boston Paternity, PST, Joseph Quintal, and himself.  (Paper 13).  The court granted this request as to John Quintal personally, but again informed him that he could not represent any of the other Defendants.  (Paper 15).

On September 26, 2008, Defendants Boston Paternity, PST, John Quintal, and Joseph Quintal, jointly represented by counsel, filed a motion to dismiss for lack of personal jurisdiction.  (Paper 16).  Defendants attached an affidavit by John Quintal to their motion, asserting that no Defendant resided in Maryland, had an office in Maryland, owned property in Maryland, had a collection site in Maryland, or derived revenue from Maryland.  On July 28, 2009, court granted Defendants' motion to dismiss for lack of personal jurisdiction as to Defendants PST, Inc., John Quintal, and Joseph Quintal and dismissed plaintiff's complaint against those defendants. (Paper 29).  Additionally, the court granted Plaintiff's request to take limited jurisdictional discovery of Defendant Boston Paternity LLC with respect to its promotional efforts in

Maryland that occurred before Plaintiff filed its complaint.  On August 11, 2009, Plaintiff filed a motion for reconsideration of the court's July 28th order on jurisdictional discovery pursuant to Federal Rules of Civil Procedure 54(b) and 60(b). (Paper 30).

## II.  Standard of Review

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case.  Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed.R.Civ.P. 54(b).

In the Fourth Circuit, the precise standard that should govern a motion for reconsideration of an interlocutory order is unclear.  *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991).  In determining whether it should reconsider an interlocutory order, a district court's consideration is not bound by the Rule 60(b) standard, though the court may at least reference parts of the Rule 60(b) standard.  *Id.* at 1470; *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) ("Motions for reconsideration

of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment."). Thus, the court's analysis is guided by Rule 60(b) but is not bound by its strictures.

Under Rule 60(b), a party may obtain relief from a judgment or final order based upon

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b). Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999).

**III. Analysis**

Plaintiff asks the court to reconsider whether Plaintiff should be allowed to take jurisdictional discovery of Defendant Boston Paternity's contacts with Maryland after the commencement of Plaintiff's suit and to take jurisdictional discovery of Defendants John and Joseph Quintal and PST, Inc. Plaintiff

argues that the court should reconsider its order "by analogy to
Rule 60(b)(2), (3), and (6)" because (1) Plaintiff has
discovered new evidence that it could not have discovered before
the court's July 28th order; (2) the new evidence casts doubt on
Defendant John Quintal's affidavit on which the court relied;
(3) the new evidence indicates that further limited discovery
would be probative of the court's jurisdictional analysis; and
(4) some legal authority indicates that courts should consider
evidence from before and after a complaint is filed to determine
personal jurisdiction in cases of continuing tortious conduct.

    Plaintiff argues that it has obtained new evidence that
should persuade the court to reconsider its order.  On August 7,
2009, Plaintiff's attorney made a routine examination of
Defendant Boston Paternity's English and Spanish websites.
(Paper 30, at 7).  Plaintiff's counsel noticed that the websites
had a "locations" feature that allowed him to view a list of
locations where Defendant had operations, though he noted that
Maryland was omitted from the list.  (*Id.*).  Plaintiff's counsel
visited the New York locations page.  In the URL bar of his web
browser, Plaintiff's counsel replaced the state name "New York"
with the word "Maryland" and was redirected to a hidden page
that described Defendant Boston Paternity's business activities,
such as the cities served by Defendant Boston Paternity, in

Maryland.  (*Id.* at 8).  Plaintiff concedes that "[b]ecause there
was no link from the respective websites to these newly-
discovered webpages, they are not easily located by an Internet
user who is not already aware of the Internet address for the
specific webpages." (*Id.*).

Defendants argue that the court, in making its
determination as to personal jurisdiction, should not consider
any evidence from after the date on which Plaintiff filed its
complaint, and in any event, that the new evidence the Plaintiff
has presented is insufficient to merit the court's
reconsideration.  Defendants state that the court was correct to
only consider evidence from before Plaintiff's complaint was
filed because "[a] defendant's contacts with a forum state, for
specific jurisdiction purposes, are measured at the time the
claim arose." (Paper 28, at 17, quoting *Marriott PLP Corp. v.
Tuschman*, 904 F.Supp. 461, 467 (D.Md. 1995)).  Defendants
disclose that the webpages that Plaintiff encountered did not
exist before August 6, 2009. (Paper 37, at 7).  Defendants
contend, therefore, that those webpages should be excluded from
the court's jurisdictional inquiry.  Furthermore, Defendants
explain that the webpages that Plaintiff encountered were
prototypes for Maryland locations pages that were only posted to
the Internet in error and that the pages were not an attempt by

10

defendants to solicit Maryland customers.  (*Id.* at 9, attach. 2 ¶ 5, 7-9).

At the outset, it is not clear whether it is even appropriate for the court to consider Plaintiff's new evidence, which materialized after Plaintiff filed its complaint.  In deciding whether specific personal jurisdiction exists, some courts have considered a defendant's conduct before and after a plaintiff has filed a complaint. *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994), *cert. denied*, 512 U.S. 1273 (1994) (stating that, in a patent infringement case involving a continuous tort, "it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction.").

Even if it is proper for the court to consider Plaintiff's new evidence, however, Plaintiff has not made a sufficient showing to change the court's ruling.  Plaintiff has essentially achieved the discovery it wants to take on Defendant Boston Paternity's website by virtue of Defendants' response to Plaintiff's motion.  With their response, Defendants provided affidavits that explain the short-lived existence of the mock-up Maryland location pages on their websites and averred that they did not conduct any business through those pages.  (Paper 37,

attach. 1 and 2).   Given Defendants' explanation regarding the webpages, the new evidence does not call into question the veracity of Defendants' previous statements.   Therefore, the new evidence that Plaintiff has presented, coupled with Defendants' response, will not alter the court's previous analysis regarding personal jurisdiction as to Defendants Boston Paternity, John or Joseph Quintal, or PST, Inc. and no jurisdictional discovery beyond the limits of its July 28th order will be permitted.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration will be denied.   A separate Order will follow.

                                              /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge